# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-107(6) (DWF/TNL) |
| Plaintiff, | |
| v. | **ORDER AND MEMORANDUM** |
| Gregory Kimmy, a/k/a Fat P, | |
| Defendant. | |

This matter is before the Court on the Government's request for *de novo* review of Magistrate Judge Andrew W. Austin's Order Setting Conditions of Release filed on May 30, 2017, Doc. No. 14, *United States of America v. Kimmy*, 1:17-MJ-375 (W.D. Tex. May 30, 2017) ("*Kimmy I*"). (Doc. No. 58.) After the Magistrate Judge ordered Defendant released, the Government filed an emergency motion seeking a stay of the release, which the Court granted pending its review of the Order. (Doc. Nos. 59 & 60.) The Government argues that Defendant should not be released because there is no set of conditions that would reasonably assure the safety of the community and Defendant's appearance at trial or that Defendant will not abide by the conditions of release. After the Court granted the stay, the Magistrate Judge issued an order and supplement to the order detailing his bases for granting release. (*Kimmy I*, Doc. Nos. 17 & 18) Both parties have filed responses to the Magistrate Judge's orders. (Doc. Nos. 68 & 71.)

Based upon the presentations of counsel, the Court having reviewed the file in this matter, including the parties' submissions to the Magistrate Judge (*Kimmy I*, Doc. Nos. 2 & 6), the audio transcript from the May 30, 2017 hearing, Magistrate Judge's Order and Supplement to the Order, the Pretrial Services Report, as well as the letters from friends and family on behalf of the Defendant, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

1. The Government's Motion for Emergency Stay and for Review and Revocation of Release Order (Doc. No. [58]) is **GRANTED**.

2. Pending further order of this Court or hearing before this Court, the Court **REVOKES** the release order entered by Magistrate Judge Andrew W. Austin on May 30, 2017. The Court specifically finds, pursuant to 18 U.S.C. § 3142(e)(3), that there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and the safety of the community.

3. **Detention Hearing.** The Court reserves the right to set a detention hearing before it once the defendant is present in the District of Minnesota and has had an opportunity to consult with counsel.

Consequently, the Court specifically orders that Defendant be detained pending further order of this Court.

Dated: June 1, 2017               s/Donovan W. Frank  
                                                        DONOVAN W. FRANK  
                                                        United States District Judge

**MEMORANDUM**

Defendant Gregory Kimmy was indicted as a member of an international sex-trafficking and money-laundering organization. Kimmy has been charged with Conspiracy to Commit Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1594 (Count 1); Conspiracy to Commit Transportation to Engage in Prostitution, in violation of 18 U.S.C. §§ 371 and 2421 (Count 3); Conspiracy to Engage in Money Laundering, in violation of 18 U.S.C. § 1956(h) (Count 4); and Conspiracy to Use a Communication Facility to Promote Prostitution, in violation of 18 U.S.C. §§ 371, 1952 (Count 5). Under the U.S. Sentencing Guidelines, if convicted of these offenses, Defendant faces an advisory sentence of life in prison.

Defendant was allegedly one of the house bosses for the sex-trafficking organization. House bosses would run the day-to-day operations, including advertising victims for commercial sex acts, procuring and maintaining the houses of prostitution, scheduling sex buyers, and ensuring that a portion of the cash was routed back to pay down the victim's bondage debts. (Doc. No. 46 ("Indictment") ¶ 5b.) In exchange, house bosses retained a significant portion of the cash that the victims received, typically 40%. (*Id.*) House bosses would also coordinate with traffickers and other house bosses to facilitate the victims' travel to other cities in the United States. (*Id.*) Once victims were lured to the United States, they were forced to work long hours—often all day, every day—having sex with strangers to attempt to pay down their bondage debt.

3

Victims typically did not have the ability to choose with whom they had sex, what sex transactions they would engage in, or when they would have sex. (*Id.* ¶ 4.)

Defendant and his wife are both indicted house bosses in this case. (*Id.* ¶ 5.) Defendant and his wife are lessors of a house where law enforcement observed activity consistent with an active house of prostitution—i.e., a series of men, later identified by the victims as sex buyers, entering and leaving the house at hourly intervals. (Doc. No. 58 at 8-9.) Defendant was observed at the house of prostitution, and a phone number associated with him was used to schedule sex buyers. (*Kimmy I*, Doc. No. 17 ("Order") ¶ 2.) Additionally, the Government states that witnesses—including a co-defendant—will testify that Defendant was a house boss.

Defendant has sought pretrial release. The Pretrial Services Report recommended that Defendant be detained because of: (1) the nature of the offense; (2) Defendant's foreign ties—his step-son lives in Thailand, and Defendant's wife owns a home there; (3) Defendant's possession of a valid U.S. Passport; (4) Defendant's trip to Thailand in 2014; and (5) Defendant's ownership of a firearm. The Magistrate Judge, however, granted conditional release, and the Government appealed. The district court conducts a *de novo* review of release and detention orders. Pursuant to Rule 46(b) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3142, courts consider the following factors in assessing the continued detention of a defendant:

    (a)    The nature and circumstances of the offense charged . . . ;

    (b)    the weight of the evidence against the [defendant];

      (c)      the history and characteristics of the [defendant] . . . ; and

      (d)      the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release . . . .

Pretrial detention may be ordered either upon a clear and convincing showing that release would result in a danger to the community or upon a showing by a preponderance of the evidence that the release will result in a serious risk of flight. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Moreover, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed."
18 U.S.C § 3142(e)(3)(D).

Here, Defendant has been charged with Conspiracy to Commit Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1594 (Count 1), a Chapter 77 offense punishable by up to life in prison. Defendant was the lessor of the house of prostitution, he was observed at the house of prostitution, and a phone number associated with him was used to schedule sex buyers. Further, witnesses will testify to Defendant's role as a house boss. Given these particular allegations, there is probable cause to believe that Defendant committed Count I of the Indictment. As a result, Defendant must overcome the rebuttable presumption of detention.

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *UAbad*, 350 F.3d at 797 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once a defendant has met his burden, a presumption favoring detention "remains a factor to be considered among those weighed by the district court." *Id.*

Here, in granting conditional release, the Magistrate Judge concluded that Defendant overcame the statutory presumption, and that the Government had failed to prove Defendant was a flight risk. (Order at 1.) In reaching that conclusion, the Magistrate Judge dismissed evidence linking Defendant to the conspiracy because the Government had failed to provide any evidence that Defendant had ever: (1) communicated with the lead members of the conspiracy; (2) met any of the members of the conspiracy other than his wife; or (3) traveled to Minneapolis. (*Id.* at ¶ 1.) Similarly, the Magistrate Judge discounted Defendant's involvement because the Government provided no evidence that Defendant "engaged in any violent or coercive behavior, visa fraud, or had control of large sums of money." (*Id.* at ¶ 5.)

Additionally, in analyzing factors for release, the Magistrate Judge found that: (1) Defendant is a U.S. citizen and lifelong Texas resident with strong ties to the area; (2) Defendant's family attended the hearing, and his mother testified on his behalf; (3) Defendant has no criminal history; (4) Defendant has infrequently traveled internationally; (5) Defendant's mother and brother co-signed an appearance bond in the

amount of $150,000; and (6) Defendant has known about the investigation since December 2016, but has not fled.  (Order at ¶¶ 8-13.)

The Court respectfully disagrees with the Magistrate Judge.  Defendant has been indicted as part of an international sex-trafficking and money-laundering organization.  This organization is allegedly ongoing.  The Government states that witnesses and evidence will show that Defendant was a house boss of one of the many houses of prostitution where victims were forced to work long hours—often all day, every day— having sex with strangers to attempt to pay down their bondage debt.  Victims typically did not have the ability to choose whom they had sex with, what sex transactions they would engage in, or when they would have sex.  In exchange, Defendant allegedly received a significant portion of the cash that the victims received, typically 40%.  If convicted, Defendant faces up to life in prison.  Defendant therefore faces serious charges for which there is substantial evidence.  Further, Defendant potentially has access to stockpiles of illicit cash from operating as a house boss and has access to a home in Thailand where his step-son lives.  Consequently, the Court concludes that the United States has shown that "no condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of any other person in the community."

For the reasons stated, the Court has concluded that the Government has shown by clear and convincing evidence that no set of conditions will reasonably assure the safety of the community, and the Government has shown by a preponderance of the evidence

7

that no set of conditions will reasonably assure Defendant's appearance.  The Government's appeal of Magistrate Judge Andrew W. Austin's May 30, 2017 Release Order is granted, Defendant's conditional release is revoked, and the Court orders that Defendant be detained pending further order of this Court.

D.W.F.