## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-107(6) (DWF/TNL) |
| Plaintiff, | |
| v. | **ORDER AND MEMORANDUM** |
| Gregory Allen Kimmy, a/k/a Fat P, | |
| Defendant. | |

This matter is before the Court pursuant to Defendant Gregory Allen Kimmy's Motion for a Hearing on Detention and for a Grant of Pre-Trial Release. (Doc. Nos. 301 & 304.) On August 24, 2017, the United States of America (the "Government") filed a Motion for Detention and Opposition to Defendant's Motion for Release. (Doc. No. 342.) On September 1, 2017, Defendant filed a Response to Government's Motion for Detention and Opposition to Defendant's Motion for Release. (Doc. No. 350.)

On May 30, 2017, the Government filed an emergency motion to stay and for review and revocation of the Magistrate Judge's release order. (Doc. No. 58.) On May 30, 2017, this Court filed an Order granting the Government's motion for emergency stay pending the Court's ruling on the Government's motion. On June 1, 2017, the Court filed an Order and Memorandum ordering Defendant detained pending further order of this Court. (Doc. No. 72.)

On September 19, 2017, a detention hearing was held before the undersigned. At the hearing, the Court took the matter under advisement.

**ORDER**

1.   Defendant Gregory Allen Kimmy's Motion for Hearing on Detention and Pretrial Release (Doc. Nos. [301] & [304]]) is **DENIED**.

Dated:  September 26, 2017         s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

**MEMORANDUM**

The Second Superseding Indictment before the Court charges the Defendant with Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594 (Count 1); Conspiracy to Commit Transportation to Engage in Prostitution, in violation of 18 U.S.C. § 371 (Count 3); Conspiracy to Engage in Money Laundering, 18 U.S.C. § 1956 (Count 4); and Conspiracy to Use a Communication Facility to Promote Prostitution, 18 U.S.C. § 371 (Count 5).  (Doc. No. 314 ("Indictment").)

Defendant was allegedly one of the house bosses for the sex-trafficking organization.  House bosses would run the day-to-day operations, including advertising victims for commercial sex acts, procuring and maintaining the houses of prostitution, scheduling sex buyers, and ensuring that a portion of the cash was routed back to pay down the victim's bondage debts.  (Indictment ¶ 5b.)  In exchange, house bosses retained a significant portion of the cash that the victims received, typically forty percent.  (*Id.*)  House bosses would also coordinate with traffickers and other house bosses to facilitate the victims' travel to other cities in the United States.  (*Id.*)  Once victims were lured to

2

the United States, they were forced to work long hours—often all day, every day—having sex with strangers to attempt to pay down their bondage debt. Victims typically did not have the ability to choose with whom they had sex, what sex transactions they would engage in, or when they would have sex. (*Id.* ¶ 3.)

Defendant and his wife are both indicted house bosses in this case. (*Id.* ¶ 5.) Defendant and his wife are lessors of a house where law enforcement observed activity consistent with an active house of prostitution—i.e., a series of men, later identified by the victims as sex buyers, entering and leaving the house at hourly intervals. (Doc. No. 58 at 8-9.) Defendant was observed at the house of prostitution, and a phone number associated with him was used to schedule sex buyers. (*Kimmy I*, Doc. No. 17 ("Order") ¶ 2.) Additionally, the Government states that witnesses—including a co-defendant—will testify that Defendant was a house boss. Moreover, the Government asserts that at least one victim will connect Defendant to the human trafficking conspiracy by testifying that she was transported around the United States, including to Defendant's house of prostitution.

Defendant has consistently asserted that the allegations against him constitutes, if anything, misdemeanor prostitution in the State of Texas, and he has steadfastly denied that he has any connection to an international sex-trafficking conspiracy. However, in seeking search warrants, Special Agent Price set out specifics about Defendant's alleged role in the criminal conspiracy. Specifically, Agent Price identified victims known by the nicknames "Ray" and "Lekki" who worked out of the West Wells Branch Parkway

3

apartment leased by Kimmy and his wife. Ray reported that she had recently paid off her $40,000 bondage debt without specifying to whom, but without suggesting that it was Defendant or his wife, and also stated that during her period of debt, she worked in various houses of prostitution, including significantly, Kansas City, Los Angeles, and, at Kimmy's place, in Austin. Ray also identified Defendant by photograph and disclosed that she had to pay him half of the money earned from commercial sex acts. Ray also stated that she received text messages from Defendant regarding the range of commercial sex acts with the phone number that is associated with Defendant.

Pursuant to Rule 46(b) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3142, the Court considered the following factors in assessing the continued detention of Defendant:

(1) the nature and circumstances of the offense charged, including whether the offense involves . . . a minor victim;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation . . . .

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Pretrial detention may be ordered either upon a clear and convincing showing that release would result in a danger to the community or upon a showing by a preponderance of the evidence that the release will result in a serious risk of flight. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Additionally, if a court "finds that there is probable cause to believe that the person committed an offense under chapter 77 of [Title 18] for which a maximum term of imprisonment of 20 years or more is prescribed," then the court employs a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C § 3142(e)(3)(D).

Here, Defendant has been charged with Conspiracy to Commit Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1594 (Count 1), a Chapter 77 offense punishable by up to life in prison. Defendant was the lessor of the house of prostitution, he was observed at the house of prostitution, and a phone number associated with him was used to schedule sex buyers. Further, witnesses will testify to Defendant's role as a house boss, including his connection to other members of the conspiracy. Given these particular allegations, there is probable cause to believe that Defendant committed Count 1 of the Indictment. As a result, Defendant must overcome the rebuttable presumption of detention.

5

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *UAbad*, 350 F.3d at 797 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once a defendant has met his burden, a presumption favoring detention "remains a factor to be considered among those weighed by the district court." *Id.*

Defendant principally argues that: (1) the evidence will exonerate him of his participation in this international sex-trafficking organization; (2) he is not a flight risk given his ties to Texas; and (3) compelling circumstances warrant his release.

First, the Court concludes that sufficient evidence corroborates the Government's allegations against Defendant. Defendant has been indicted as part of an international sex-trafficking and money-laundering organization. This organization is allegedly ongoing. The Government states that witnesses and evidence will show that Defendant was a house boss of one of the many houses of prostitution where victims were forced to work long hours—often all day, every day—having sex with strangers to attempt to pay down their bondage debt. In exchange, Defendant allegedly received a significant portion of the cash that the victims received, typically 40%. Further, the Government has partially identified at least two witnesses who have corroborated some of the allegations in the Indictment. In particular, the Government states that victims were sent to Defendant's home in Austin, Texas, where they would be forced to perform sex acts. Moreover, the witnesses will testify that Defendant received half of the payment that

6

victims would receive.  Thus, the Court concludes that there is sufficient evidence corroborating the allegations against Defendant.

Second, the Court concludes that even if Defendant is not a flight risk, public safety concerns warrant his continued detention.  The Government has alleged that the organization is ongoing.  Thus, Defendant, if released, could easily return to his role as a house boss.  While Defendant suggests that the prostitution alleged is a victimless crime, the reality is that victims typically did not have the ability to choose whom they had sex with, what sex transactions they would engage in, or when they would have sex.  Thus, the Court concludes that Defendant has failed to overcome the presumption that he poses a threat to public safety.

Third, the Court concludes that Defendant has failed to show compelling circumstances warrant his release.  Defendant contends that he is the primary parent for two children from a prior marriage and may lose custody if he is not released soon.  While these circumstances are concerning, Defendant has not shown they warrant release given the factors discussed above.[1]

---

[1] The Court acknowledges receipt of eleven letters on behalf of Defendant outlining his significant role as a parent, landlord, friend, brother, and son.  The Court acknowledges the letters were sincerely written.  But these letters are, perhaps sadly so, consistent with many cases that come before this Court:  a number of defendants are responsible and good family members and parents, who have, nonetheless, committed serious crimes.

For the reasons stated, the Court has concluded that Defendant has failed to overcome the presumption of detention. The Court therefore denies the Defendant's Motion for Pretrial Release.

D.W.F.