# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-107(6) (DWF/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Gregory Allen Kimmy,<br>a/k/a Fat P, | |
| Defendant. | |

This matter is before the Court pursuant to Defendant Gregory Allen Kimmy's ("Defendant") motion for modification of his detention order, (Doc. No. 796), which was entered by this Court on September 26, 2017. (Doc. No. 386.) The Government opposes Defendant's motion for modification of his detention order. (Doc. No. 816.)

## INTRODUCTION

On May 30, 2017, the Government filed a Motion for Emergency Stay and for Review and Revocation of Release Order. (Doc. No. 58.) On May 30, 2017, this Court filed an Order granting the Government's motion for emergency stay pending the Court's ruling on the Government's motion. (Doc. No. 59.) On June 1, 2017, the Court filed an Order and Memorandum ordering Defendant detained pending further order of this Court. (Doc. No. 72.)

On September 19, 2017, a detention hearing was held before the undersigned. As noted above, on September 26, 2017, this Court entered an Order and Memorandum ("September 26, 2017 Order") denying Defendant's motion for pretrial release.

**BACKGROUND**

As the parties are aware, the Second Superseding Indictment before the Court charges Defendant with Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594 (Count 1); Conspiracy to Commit Transportation to Engage in Prostitution, in violation of 18 U.S.C. § 371 (Count 3); Conspiracy to Engage in Money Laundering, 18 U.S.C. § 1956 (Count 4); and Conspiracy to Use a Communication Facility to Promote Prostitution, 18 U.S.C. § 371 (Count 5). (Doc. No. 314 ("Indictment").)

The United States Probation Department in the Western District of Texas prepared a bond report in advance of the detention hearing. Because of the defendant's connections to Austin, Texas, employment, and medical issues, the probation officer recommended detention based upon both the defendant's risk of nonappearance and risk of danger to the community. At that time, the recommendation of the probation officer was based upon (1) the nature of the offense charged; (2) the defendant's ties to a foreign country; (3) the defendant's possession of a valid U.S. passport; (4) the defendant's travel to Thailand in 2014; (5) the defendant's ownership of a firearm; (6) the charge involved a sex offense-abuse; and (7) safety concerns for the community.

Admittedly, at the time of the motion hearing, on September 19, 2017, the Court examined allegations that were detailed in an affidavit, which included information from law enforcement interviews of at least three victims of the sex trafficking organization who worked at the house of prostitution in Austin, Texas, identified as the house of the defendant and his wife and co-defendant Saowapha Thinran. At that time, the Court found, and continues to find, based upon the record before the Court, that the defendant

was the lessor of the house of prostitution, he was observed at the house of prostitution, and a phone number associated with him was used to schedule sex buyers. Further, the Court noted that witnesses would testify to the defendant's role as a house boss, including his connection to other members of the conspiracy. The record before this Court establishes that so-called house bosses run the day-to-day operations, including advertising victims for commercial sex acts, procuring and maintaining the houses of prostitution, scheduling sex buyers, and ensuring that a portion of the cash was routed back to pay down the victim's bondage debts. (Indictment ¶ 5.b.) In exchange, the house bosses would then retain a significant portion of the cash that the victims received, typically forty percent.

The Court incorporates into this Order its findings and conclusions set forth in its September 26, 2017 Order. (Doc. No. 386.) What has been established since the Court's Order is that each of the victims referenced in the Court's original Order were trafficking victims who were under a bondage debt up to $60,000 to the sex trafficking organization which the defendant was a member of or participated in. This Court has taken numerous pleas in this case since September of 2017 where this bondage debt has been acknowledged and admitted to by numerous co-defendants.

Moreover, since the Court's Order, two additional victims have been identified, as observed by the Government, namely, C.N. (known as Sai) and S.M. (known as Amy), who worked for the defendant and Thinran while they were still under the bondage debt that many of the women, who this Court has referred to as victims, have acknowledged and were under, as many co-defendants have admitted to.

3

It is true that the defendant has consistently asserted that the allegations against him constitute, if anything, misdemeanor prostitution in the state of Texas, and he has steadfastly denied that he has any connection to an international sex trafficking conspiracy. However, scrutiny of the search warrants that the Court has before it, set out the specifics about the defendant's alleged role and knowledge of the criminal conspiracy, as this Court observed in its September 26, 2017 Order. There is some sad irony in all of the facts being asserted before this Court, to the extent that the defendant himself purchased his wife's freedom from her bondage debt from the organization and then, after that, went on to run the house of prostitution with her for a number of years, even after the initial indictment in *United States v. Intarathong*, 16-CR-257. Moreover, even setting aside that the defendant, at a minimum, offered to pay off his wife's bondage debt that remained in the amount of $18,000, to presumably extricate her from the sex trafficking organization, the Government has identified five victims who worked at the defendant's and Thinran's house of prostitution and there are connections to multiple other house bosses and money launderers in different locations throughout the United States--all alleged to be part of the sex trafficking conspiracy before this Court.

With respect to the defendant's medical condition, the parties have described a quite different set of circumstances to this Court. At this time, the Government asserts that the defendant's medical issues have been addressed. The Court will continue to review that situation depending on the status of the case and how it progresses. Until there is further evidence before the Court, there is not any information before the Court that would compel this Court to release the defendant for medical reasons.

**DISCUSSION**

Pursuant to Rule 46(b) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3142, the Court considered the following factors in assessing the continued detention of Defendant:

(1) the nature and circumstances of the offense charged, including whether the offense involves . . . a minor victim;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation . . . .

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Pretrial detention may be ordered either upon a clear and convincing showing that release would result in a danger to the community or upon a showing by a preponderance of the evidence that the release will result in a serious risk of flight. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Additionally, if a court "finds that there is probable cause to believe that the person committed an offense under chapter 77 of [Title 18] for which a maximum term of imprisonment of 20 years or more is prescribed," then the court employs a rebuttable presumption that "no condition or combination of conditions will reasonably

assure the appearance of the person as required and the safety of the community." 18 U.S.C § 3142(e)(3)(D).

As the parties are aware, the defendant has been charged with Conspiracy to Commit Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1594 (Count 1), a Chapter 77 offense punishable by up to life in prison. As the Court noted in its September 26, 2017 Order, the defendant was the lessor of a house of prostitution, he was observed at the house of prostitution, and a phone number associated with him was used to schedule sex buyers. Moreover, the Government has stated and asserts before this Court that witnesses will testify to Defendant's role as a house boss, including his connection to other members of the conspiracy alleged in this case. When the Court reviews these particular assertions, based upon the record before the Court, there continues to be probable cause to believe that the defendant committed Count 1 of the Second Superseding Indictment. Consequently, the defendant must overcome the rebuttable presumption of detention.

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Abad*, 350 F.3d at 797 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once a defendant has met his burden, a presumption favoring detention "remains a factor to be considered among those weighed by the district court." *Id.*

The defendant continues to assert that the evidence will exonerate him of his participation in the international sex trafficking organization that has been acknowledged by numerous defendants before this Court.

The Court continues to find that there is sufficient evidence to corroborate the Government's assertions against the defendant. The defendant has been indicted as part of an international sex trafficking, money laundering organization where numerous defendants have pled guilty and indicated the specifics of the organization. The Court continues to conclude, as it did in its prior Order, that the Government has provided sufficient evidence corroborating its assertions against the defendant as it relates to his involvement in the international sex trafficking organization. The Court also continues to conclude that there remain public safety concerns that require this Court to continue the detention of the defendant. Even if the Court were to assume, which it does not, that the prostitution alleged here is a victimless crime, the sad reality is that many of these women who the Court legitimately accepts as victims, typically did not have the ability to choose whom they had sex with, what transactions they would engage in, when they would have sex, or that the sex was in any true meaning of the word "voluntary." The Court therefore continues to conclude that the defendant has failed to overcome the presumption that he poses a threat to public safety, if released. Finally, there are no new circumstances before this Court that change the Court's conclusion in September of 2017 that there are no compelling circumstances that require this Court to release him.[1]

---

[1] The Court acknowledges that the defendant has asserted that he is the primary
(Footnote Continued on Next Page)

**CONCLUSION**

For the reasons stated in the Court's September 26, 2017 Order and for the reasons set forth in this Order, the Court continues to conclude that the defendant has failed to overcome the presumption of detention.

Based upon the presentations and submission of the parties, the Court having carefully reviewed the entire record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

Defendant Gregory Allen Kimmy's Motion for Modification of Detention Order (Doc. No. [796]) is respectfully **DENIED**.

Dated: July 6th, 2018      s/Donovan W. Frank
                           DONOVAN W. FRANK
                           United States District Judge

---

(Footnote Continued From Previous Page)
parent for two children from a prior marriage and may lose custody if he remains incarcerated. While the Court is concerned about these circumstances, they do not warrant release of the defendant at this time. The Court acknowledges receipt of eleven letters on behalf of Defendant outlining his significant role as a parent, landlord, friend, brother, and son. The Court acknowledges the letters were sincerely written. But these letters are, perhaps sadly so, consistent with many cases that come before this Court: a number of defendants are responsible and good family members and parents, who have, nonetheless, committed serious crimes.